following the Effective Date (unless due at a later date, in which case it will be satisfied when due).

    4.3    **Classes 3 (Certain Secured Claims).**  Class 3 shall consist of certain Secured Claims not otherwise classified in Classes 4, 5, 6, 7, 8, 9 or 10.

    4.3.1    **Class 3.**  Class 3 Claims are impaired.  At the option of the Debtors or the Reorganized Debtors, as applicable, in consultation with the Buyer, to the extent the Claimant has an Allowed Secured Claim in Class 3, such Claim will receive one of the following alternative treatments to the extent not inconsistent with the Asset Purchase Agreement:  (i) the holder of such Claim will retain its Lien on its collateral until such collateral is sold (including a sale under the Asset Purchase Agreement) and, upon such sale, the proceeds of such sale will be paid to the Claimant in full satisfaction and release of its Claim; (ii) the holder of such Claim will receive, from Net Plan Proceeds, or if such Claim is an Assumed Obligation, from the Buyer, a Cash payment equal to the amount of its Allowed Secured Claim (as determined by the value of the Lien securing such Claim) in full satisfaction and release of such Claim and, upon such payment the Lien on the property securing such Claim will be extinguished; or (iii) the holder of such Claim will have the collateral securing such Claim abandoned to it in full satisfaction and release of such Claim.  The Debtors are not aware of any Class 3 Claims.

    4.3.2    **Selection of Treatment Option With Respect To Class 3 Claims.**  The Debtors or Reorganized Debtors, as applicable, shall advise each holder of an Allowed Secured Claim in this Class in writing of which option it has selected for such Claimant on or before three (3) Business Days prior to the Ballot Deadline.

    4.4    **Class 4 Claims (Tax Payment Obligees).**  Class 4 shall consist of the Secured Claims of the holders of Claims under the Tax Payment Obligations Documents.  Class 4 Claims are impaired.  On the Effective Date, the purchase and sale transaction provided for under the Asset Purchase Agreement will Close, and the Purchased Assets will be sold to the Buyer, free and clear of the Liens and Claims of the Tax Payment Obligees, with such Liens and Claims attaching to the Purchase Price.  After giving effect to the Tax Payment Obligations Intercreditor Agreement, each holder of an Allowed Secured Claim in Class 4 shall be paid on the Effective

Case: 04-45343   Doc# 242-2   Filed: 12/10/04   Entered: 12/10/04 15:39:52   Page 1 of 44

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Date (or as soon thereafter as is practicable), in Cash, from the Purchase Price, in full satisfaction of its Claim, an amount equal to its Claim under the Taxpayer Obligations Agreement. From and after the Effective Date, the Purchased Assets will be free and clear of any Liens or Claims of such Claimants.

4.5 **Class 5 Claims (Chase Lender Group).** Class 5 shall consist of the Secured Claims of the Chase Lender Group under the Chase Loan Documents. Class 5 Claims are impaired. On the Effective Date, the purchase and sale transaction provided for under the Asset Purchase Agreement will Close, and the Purchased Assets will be sold to the Buyer, free and clear of the Liens and Claims of the Chase Lender Group, with such Liens and Claims attaching to the Purchase Price. After giving effect to the Tax Payment Obligations Intercreditor Agreement and the Senior Intercreditor Agreement, each holder of an Allowed Secured Claim in Class 5 shall be paid (or as soon thereafter as is practicable), on the Effective Date, in Cash, from the Purchase Price, in full satisfaction of its Allowed Secured Claim, an amount equal to its Pro Rata Share of the value of the interest of the Chase Lender Group in the Chase Lender Group Collateral, as determined by the Bankruptcy Court at or before the Confirmation Hearing, based upon the value of the interest of the Chase Lender Group in the portion of the Purchased Assets that consists of Chase Lender Group Collateral. From and after the Effective Date, the Purchased Assets will be free and clear of any Liens or Claims of such Claimants. If and to the extent there is a Supplemental Payment after the Effective Date, the portion of such payment attributable to the portion of the Purchased Assets that consists of Chase Lender Group Collateral shall be promptly distributed to each holder of an Allowed Secured Claim in Class 5, on account of such Claim, in an amount equal to its Pro Rata Share of such payment. Following the Effective Date, any Excluded Assets that constitute Chase Lender Group Collateral (other than Litigation that is part of Chase Lender Group Collateral) shall be sold by the Reorganized Debtors as quickly as practicable, free and clear of the Liens of the Chase Lender Group against such property, and each holder of an Allowed Secured Claim in Class 5 shall be paid, from the proceeds of such sale(s), on account of such Claim, an amount equal to its Pro Rata Share of the value of the interest of the Chase Lender Group in the property sold. Upon such payment, the property sold

FIRST AMENDED JOINT PLAN OF REORGANIZATION
DOCS_NY:7547.1

will be free and clear of the Liens and Claims of such Claimants. In addition, following the Effective Date, any Litigation Recovery realized from Litigation that is part of the Chase Lender Group Collateral shall be paid or distributed to each holder of an Allowed Secured Claim in Class 5, on account of such Claim, in an amount equal to such holder's Pro Rata Share thereof. The Debtors believe the Chase Lender Group is undercollateralized.

4.6    **Class 6 Claims (GMACCM).** Class 6 shall consist of the Secured Claims of GMACCM under the GMACCM Loan Documents. Class 6 Claims are impaired. On the Effective Date, the purchase and sale transaction provided for under the Asset Purchase Agreement will Close, and the Purchased Assets will be sold to the Buyer, free and clear of the Liens and Claims of GMACCM, with such Liens and Claims attaching to the Purchase Price. The holder of the Allowed Secured Claim in Class 6 shall be paid, on the Effective Date (or as soon thereafter as is practicable), in Cash, from the Purchase Price, in full satisfaction of its Allowed Secured Claim, an amount equal to the value of its interest in the GMACCM Collateral, as determined by the Bankruptcy Court at or before the Confirmation Hearing, based upon the value of the interest of GMACCM in the portion of the Purchased Assets that consists of GMACCM Collateral. From and after the Effective Date, the Purchased Assets will be free and clear of any Liens or Claims of such Claimant. If and to the extent there is a Supplemental Payment after the Effective Date, the portion of such payment attributable to the portion of the Purchased Assets that consists of GMACCM Collateral shall be promptly distributed to the holder of the Allowed Secured Claim in Class 6 on account of such Claim. Following the Effective Date, any Excluded Assets that constitute GMACCM Collateral (other than Litigation that is part of the GMACCM Collateral) shall be sold by the Reorganized Debtors as quickly as practicable, free and clear of the Liens of GMACCM against such property, and the holder of the Allowed Secured Claim in Class 6 shall be paid, from the proceeds of such sale(s), on account of such Claim, an amount equal to the value of its interest in the property sold. Upon such payment, the property sold will be free and clear of the Liens and Claims of such Claimant. In addition, following the Effective Date, any Litigation Recovery realized from Litigation that is part of the

Case: 04-45343   Doc# 242-2   Filed: 12/10/04   Entered: 12/10/04 15:39:52   Page 3 of 44

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

GMACCM Collateral shall be paid or distributed to the holder of the Class 6 Claim on account of such Claim. The Debtors believe GMACCM is undercollateralized.

4.7 **Class 7 Claims (GEC-BAFC).** Class 7 shall consist of the Secured Claims of GEC-BAFC under the GEC-BAFC Loan Documents. Class 7 Claims are impaired. On the Effective Date, the purchase and sale transaction provided for under the Asset Purchase Agreement will Close, and the Purchased Assets will be sold to the Buyer, free and clear of the Liens and Claims of GEC-BAFC with such Liens and Claims attaching to the Purchase Price. The holder of the Allowed Secured Claim in Class 7 shall be paid, on the Effective Date (or as soon thereafter as is practicable), in Cash, from the Purchase Price, in full satisfaction of its Allowed Secured Claim, an amount equal to the value of its interest in the GEC-BAFC Collateral, as determined by the Bankruptcy Court at or before the Confirmation Hearing, based upon the value of the interest of GEC-BAFC in the portion of the Purchased Assets that consists of GEC-BAFC Collateral. From and after the Effective Date, the Purchased Assets will be free and clear of any Liens or Claims of such Claimant. If and to the extent there is a Supplemental Payment after the Effective Date, the portion of such payment attributable to the portion of the Purchased Assets that consists of GEC-BAFC Collateral shall be promptly distributed to the holder of the Allowed Secured Claim in Class 7 on account of such Claim. Following the Effective Date, any Excluded Assets that constitute GEC-BAFC Collateral (other than Litigation that is part of the GEC-BAFC Collateral) shall be sold by the Reorganized Debtors as quickly as practicable, free and clear of the Liens of GEC-BAFC against such property, and the holder of the Allowed Secured Claim in Class 7 shall be paid, from the proceeds of such sale(s), on account of such Claim, an amount equal to the value of its interest in the property sold. Upon such payment, the property sold will be free and clear of the Liens and Claims of such Claimant. In addition, following the Effective Date, any Litigation Recovery realized from Litigation that is part of the GEC-BAFC Collateral shall be paid to the holder of the Class 7 Claim on account of such Claim. The Debtors believe GEC-BAFC is undercollateralized.

4.8 **Class 8 Claims (BKC).** Class 8 shall consist of the Secured Claims of BKC under the BKC Loan Documents. Class 8 Claims are impaired. On the Effective Date, the

FIRST AMENDED JOINT PLAN OF REORGANIZATION

DOCS_NY-7547.1

Case: 04-45343 Doc# 242-2 Filed: 12/10/04 Entered: 12/10/04 15:39:52 Page 4 of 44

purchase and sale transaction provided for under the Asset Purchase Agreement will Close, and the Purchased Assets will be sold to the Buyer, free and clear of the Liens and Claims of BKC, with such Liens and Claims attaching to the Purchase Price. After giving effect to the Tax Payment Obligations Intercreditor Agreement and the Senior Intercreditor Agreement, the holder of the Allowed Secured Claim in Class 8 shall be paid, on the Effective Date (or as soon thereafter as is practicable), in Cash, from the Purchase Price, in full satisfaction of its Allowed Secured Claim, an amount equal to the value of its interest in the BKC Collateral, as determined by the Bankruptcy Court at or before the Confirmation Hearing, based upon the value of the interest of BKC in the portion of the Purchased Assets that consists of BKC Collateral. From and after the Effective Date, the Purchased Assets will be free and clear of any Liens or Claims of such Claimant. If and to the extent there is a Supplement Payment after the Effective Date, the portion of such payment attributable to the Purchased Assets that consists of BKC Collateral shall be promptly distributed to the holder of the Allowed Secured Claim in Class 8 on account of such Claim. Following the Effective Date, any Excluded Assets that constitute BKC Collateral (other than Litigation that is part of the BKC Collateral) shall be sold by the Reorganized Debtors as quickly as practicable, free and clear of the Liens of BKC against such property, and the holder of the Allowed Secured Claim in Class 8 shall be paid, from the proceeds of such sale(s), on account of such Claim, an amount equal to the value of its interest in the property sold. Upon such payment, the property sold will be free and clear of the Liens and Claims of such Claimant. In addition, following the Effective Date, any Litigation Recovery realized from Litigation that is part of the BKC Collateral shall be paid or distributed to the holder of the Class 8 Claim on account of such Claim.

4.9 **Class 9 Claims (ACIC).** Class 9 shall consist of the Secured Claims of ACIC under the ACIC Documents. Class 9 Claims are impaired. On the Effective Date, the purchase and sale transaction provided for in the Asset Purchase Agreement will Close, and the Purchased Assets will be sold to the Buyer, free and clear of the Liens and Claims of ACIC, with such Liens and Claims attaching to the Purchase Price. After giving effect to the Chase-ACIC Intercreditor Agreement, the holder of the Allowed Secured Claim in Class 9 shall be paid, on the

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**FIRST AMENDED JOINT PLAN OF REORGANIZATION**

DOCS_NY:7547.1

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Effective Date, in Cash, from the Purchase Price, an amount equal to the value of its interest in the Morgan Hill Property, as determined by the Bankruptcy Court at or before the Confirmation Hearing, based upon the amount due under the ACIC Promissory Note with respect to the ACIC Bonds and the value of the Morgan Hill Property; provided, however, that to the extent any of the ACIC Bonds are undrawn and have not expired as of the Effective Date, the Debtors shall hold the funds, if any, attributable to such unexpired bonds until such time as either (i) the bonds are drawn, in which event, the funds, if any, shall promptly be disbursed to ACIC, or (ii) the bonds expire without being drawn, in which event, the funds, if any, shall promptly be distributed to the holders of Allowed Secured Claims in Class 5 in accordance with the provisions in section 4.5 of this Plan.    From and after the Effective Date, the Morgan Hill Property and the other Purchased Assets will be free and clear of any Liens or Claims of such Claimant.

4.10    **Class 10 Claims (Secured Personal Property Tax Claims).** Class 10 shall consist of Secured Personal Property Tax Claims.  Class 10 Claims are impaired.  Pursuant to the Asset Purchase Agreement, Secured Personal Property Tax Claims which are Assumed Obligations will be assumed by the Buyer as part of the Assumed Obligations and the Buyer shall pay each Secured Personal Property Tax Claim after the Effective Date, in Cash, as and when such obligation comes due or, if already due at the time of the Effective Date, the Buyer shall pay such Secured Personal Property Tax Claim upon or promptly following the Effective Date.  Any Secured Personal Property Tax Claims which are not Assumed Obligations shall be paid by the Debtors, in Cash, from the Purchase Price, in an amount equal to the value of the interest of the holder of such Claim in the personal property of the Debtors which secures such Claim, as determined by the Bankruptcy Court at or before the Confirmation Hearing, based upon the value of the interest of the applicable governmental unit or taxing authority in the portion of the Purchased Assets that is subject to such governmental unit's or taxing authority's Claim.  Upon payment of such Claims, the Liens securing such Claims shall be discharged.

4.11    **Class 11 (Participating Vendors).** Class 11 shall consist of the Claims of Participating Vendors that arose before the Petition Date.  Class 11 Claims are impaired.  Claims arising before the Petition Date of trade suppliers or vendors who do not qualify as Participating

FIRST AMENDED JOINT PLAN OF REORGANIZATION
DOCS_NY:7547.1

Vendors are not Assumed Obligations.  The Allowed Claim of each holder of a Class 11 Claim will be assumed by the Buyer and satisfied, without interest or penalty, upon or promptly following the Effective Date.

4.12  **Class 12 (Unsecured Claims).**  Class 12 shall consist of Unsecured Claims other than the Claims of Participating Vendors.  Class 12 Claims are impaired.  The holders of Claims in Class 12 shall be paid nothing from the Purchase Price or any Supplemental Payment.  Notwithstanding the foregoing, if and to the extent any Litigation Recovery or any Liquidation Proceeds result in Net Plan Proceeds in excess of what is distributed or distributable to Administrative Claims, Priority Tax Claims, and Classes 1 through 10 under this Plan, such Net Plan Proceeds will be distributed, Pro Rata, to the holders of Allowed Claims in Class 12.  In addition, if there is a Special Class 12 Distribution, such distribution shall be made, promptly after the Effective Date, Pro Rata, only to the Specified Holders of Allowed Unsecured Claims in Class 12.  Notwithstanding anything to the contrary herein, no holder of an Allowed Class 12 Claim shall be paid more than the Allowed amount of its Claim from any combination of Special Class 12 Distributions and Net Plan Proceeds, and therefore, any Special Class 12 Distribution received by a Claimant in Class 12 shall be deemed to reduce the Allowed amount of such Claimant's Class 12 Claim for purposes of calculating such Claimant's Pro Rata Share of any Net Plan Proceeds that are distributable to Class 12.

4.13  **Class 13 (Interests).**  Class 13 Interests are impaired.  Each holder of an Interest shall receive nothing under the Plan and its Interest in the applicable Debtor will be deemed cancelled on the Effective Date.  Each Holder of an Interest in a Debtor is deemed to have rejected this Plan.

4.14  **Assumed Obligations.**  Nothing in this Article 4 shall prevent the Buyer from contesting in good faith the amount of validity of any Assumed Obligation that is not an Allowed Claim.

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 04-45343   Doc# 242-2   Filed: 12/10/04   Entered: 12/10/04 15:39:52   Page 7 of 44

4.15    **Nonconsensual Confirmation**.

4.15.1 **Class 1 Cramdown**. The Debtors hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 1 Claims.

4.15.2 **Class 2 Cramdown**. The Debtors hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 2 Claims.

4.15.3 **Class 3 Cramdown**. The Debtors hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 3 Claims.

4.15.4 **Class 4 Cramdown**. The Debtors hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 4 Claims.

4.15.5 **Class 5 Cramdown.** The Debtors hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 5 Claims.

4.15.6 **Class 6 Cramdown.** The Debtors hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holder of Class 6 Claims.

4.15.7 **Class 7 Cramdown.** The Debtors hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holder of Class 7 Claims.

4.15.8 **Class 8 Cramdown.** The Debtors hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holder of Class 8 Claims.

4.15.9 **Class 9 Cramdown.** The Debtors hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 9 Claims.

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**FIRST AMENDED JOINT PLAN OF REORGANIZATION**

DOCS_NY:7547.1

4.15.10 **Class 10 Cramdown.** The Debtors hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 10 Claims.

4.15.11 **Class 11 Cramdown.** The Debtors hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 11 Claims.

4.15.12 **Class 12 Cramdown.** The Debtors hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 12 Claims.

4.15.13 **Class 13 Cramdown.** The Debtors hereby request confirmation of the Plan pursuant to section 1129(b) of the Bankruptcy Code on the basis that the Plan is fair and equitable and does not discriminate unfairly as to the holders of Class 13 Interests.

## ARTICLE 5

## MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan shall be implemented on the Effective Date. In addition to the provisions set forth elsewhere in this Plan regarding means of execution, the following shall constitute the principal means for the implementation of the Plan.

5.1 **Asset Purchase Agreement.** This Plan shall be implemented on the Effective Date by the Closing of the Asset Purchase Agreement. The entry of the Confirmation Order shall act as an order authorizing and approving the entry into and performance under the Asset Purchase Agreement by each of the Sellers who are Debtors and each of the Reorganized Debtors who are Sellers and their respective successors and assigns. On the Effective Date, the Asset Purchase Agreement shall be binding upon and enforceable against the Debtors and upon the Reorganized Debtors, the Consolidated Estate and the Disbursing Agent as successors in interest to the Debtors, as well as their respective managers, employees or agents, including the Responsible Officer. The Asset Purchase Agreement is incorporated herein and shall control with respect to the subject matters addressed therein. For purposes of clarification, nothing in this Plan shall alter or expand the obligations of the Buyer under the Asset Purchase Agreement, and the

Buyer's sole obligations to the Debtors, the Reorganized Debtors or the holders of any Claims or Interests shall be those set forth in and enforceable under the Asset Purchase Agreement without reference to this Plan, and nothing in this Plan shall be deemed to or shall impose upon Buyer any additional obligations. Without limiting the generality of the foregoing, and without denigrating or altering the terms of the Asset Purchase Agreement in any manner, on (or, where appropriate, after) the Effective Date, the following actions shall occur:

(i)     The purchase and sale transaction contemplated under the Asset Purchase Agreement shall be consummated;

(ii)    The Buyer shall, among other things, pay the Estimated Cash Portion of the Purchase Price to the Sellers and deposit the Reserve Amount with the Escrow Agent;

(iii)   Each Cure Obligation required to be paid under section 365(b)(1) of the Bankruptcy Code to a non-debtor party under an Assumed Executory Contract shall be paid (i) if the Cure Obligation is not a Trade Payable Agreement Cure, by the Debtors (or by the Buyer on behalf of the Debtors) to such party; or (ii) if the Cure Obligation is a Trade Payable Agreement Cure, by the Buyer to such party;

(iv)    The Buyer shall assume and, when required under the terms of the Asset Purchase Agreement or this Plan, satisfy, the Assumed Obligations;

(v)     The Purchased Assets shall be transferred to the Buyer free and clear of Liens and Claims;

(vi)    All Liens on the Purchased Assets shall attach to the Purchase Price and to any Supplemental Payments, or to the portions thereof, to which such Liens relate;

(vii)   Upon the Effective Date, all promissory notes, loan agreements, security agreements, leasehold mortgages, and leasehold deeds of trust, and similar documents, instruments, and agreements, with respect to Claims against the Debtors, including, without limitation, the Chase Loan Documents, the BKC Loan Documents, the GEC-BAFC Loan Documents, the GMACCM Loan Documents, and the ACIC Documents, shall be of no further force or effect with respect to the Purchased Assets, and each of the foregoing documents, instruments, and agreements will only represent, and shall only be

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 04-45343   Doc# 242-2   Filed: 12/10/04   Entered: 12/10/04 15:39:52   Page 10 of 44

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

enforceable with respect to, the rights of holders of Allowed Claims to receive payments or distributions under this Plan.

(viii)   Following entry of the Assumption and Assignment Order with respect to the Existing Holdings Company Leases, the Closure Properties that are subject to the Existing Holding Company Leases will be deleted from such leases and shall be abandoned to the applicable Holdings Company free and clear of Liens and Claims at the Closing, immediately prior to the point in time at which the Asset Purchase Agreement and related transactions are actually consummated and the Master Leases become effective.  Any Chase Lender Group Collateral, GEC-BACF Collateral or GMACCM Collateral that is personal property located on the premises of the Closure Properties that are subject to the Existing Holding Company Leases shall be sold by the Debtors, free and clear of Liens and Claims, with all such Liens and Claims to attach to the proceeds thereof, or abandoned.

(ix)   Any adjustments to the Purchase Price will be determined in accordance with the Asset Purchase Agreement;

(x)   Pursuant to Bankruptcy Code section 510 (a), the Intercreditor Agreements shall be implemented and enforced;

(xi)   After giving effect to the Intercreditor Agreements, the portions of the Purchase Price for the Purchased Assets allocable to payment of the Allowed Secured Claims of the Tax Payment Obligees, the Chase Lender Group, GMACCM, GEC-BAFC, BKC, and ACIC, if any, shall be paid to the appropriate parties as the holders of Allowed Secured Claims in Classes 4, 5, 6, 7, 8, and/or 9; and

(xii)   Any Supplemental Payments will be delivered to the party or parties entitled thereto.

5.2   **Alternate Transaction**.  The Debtors (in consultation with the Official Committee) have agreed to permit potential purchasers to bid against Strategic provided such potential purchasers unequivocally agree to step into and assume Strategic's position in each of the Transaction Documents, to match Strategic's financial strength and financial commitments, to

48

pay Cash, to demonstrate to the reasonable satisfaction of the Debtors and the Committee that such bidder can close and consummate the Amended Transaction Documents to the same extent as Strategic can close and consummate the Transaction Documents, to arrange for or provide comparable Credit Support to that provided with respect to Strategic and to perform Strategic's obligations under each of the Transaction Documents, except as to the limited variations permitted under this Plan. In addition, an Alternate Buyer must be approved by BKC as a franchisee for the Restaurants. Thus, an Alternate Buyer must enter into and perform the Amended Transaction Documents in the same manner and within the same time frame as Strategic, except the Alternate Buyer must increase the initial Purchase Price under the Strategic Asset Purchase Agreement by at least an amount that is sufficient to exceed the initial amount bid by Strategic plus the amount of the Topping Fee that will become due to Strategic if Strategic is replaced with an Alternate Buyer, and in any event, to be successful, the Alternate Buyer must present and offer to pay a Purchase Price that exceeds the highest and best offer from any other qualified bidder including Strategic. In the event there is an Alternate Buyer who qualifies to replace Strategic, (i) such Alternate Buyer shall be the Buyer for all purposes under this Plan; (ii) the Amended Asset Purchase Agreement shall be the Asset Purchase Agreement for all purposes under this Plan; (iii) the Amended Transactions Documents shall be substituted for the Transaction Documents and the Amended Transaction Documents shall be consummated at the Closing in lieu of the Transaction Documents; (iv) the Purchase Price shall be the highest offered by any qualified bidder including Strategic and must, at a minimum, exceed the initial Purchase Price in the Strategic Asset Purchase Agreement by an amount equal to the Topping Fee plus $1,000; and (v) upon the Effective Date and occurrence of the Closing, Strategic shall retain the Expense Deposit provided to it under the Strategic Asset Purchase Agreement and the Debtors shall pay the Topping Fee to Strategic from the Purchase Price paid by the Alternate Buyer under the Amended Asset Purchase Agreement. Other than the changes to the Transaction Documents to substitute the Alternate Buyer for Strategic to increase the Purchase Price, and to eliminate the Expense Deposit and the Topping Fee, there shall be no other changes to the terms, provisions, agreements, covenants, conditions and requirements of the Transaction Documents. For clarity, if

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

there is not an Alternate Buyer, then Strategic shall be the Buyer, the Asset Purchase Agreement shall be the Strategic Asset Purchase Agreement, the Transaction Documents will be unchanged, and there will not be any Amended Transaction Documents; provided, however, if Strategic increases the Purchase Price, such increased price shall be the Purchase Price.

5.3 **Substantive Consolidation**. The entry of the Confirmation Order shall constitute approval by the Bankruptcy Court, pursuant to sections 105(a) and 1123(a)(5)(C) of the Bankruptcy Code, effective as of the Effective Date, of the substantive consolidation of the Debtors and their respective Estates, for all purposes relating to the Plan, including for purposes of voting, confirmation, and distributions. On and after the Effective Date, except as set forth below, (a) all assets and liabilities of the Debtors shall be treated as though they were pooled; (b) no distribution shall be made under the Plan on account of any Claim held by any one of the Debtors against any of the other Debtors, other than Administrative Claims of one Debtor against another Debtor; (c) no distribution shall be made under the Plan on account of any Interest held by any one of the Debtors in any of the other Debtors; (d) all guaranties of any one of the Debtors of the obligations of any of the other Debtors shall be eliminated so that any Claim against any one of the Debtors, and any guaranty thereof executed by any of the other Debtors, shall be one obligation of the Consolidated Estate; (e) all Secondary Liability Claims will be entitled to a single recovery, and thus a single distribution (and no multiple recovery) on any such Claims; and (f) every Claim filed or to be filed in the Chapter 11 Case of any of the Debtors shall be deemed filed against the Consolidated Estate and shall be one Claim against, and one obligation of, the Consolidated Estate.

In addition, notwithstanding any provision hereof to the contrary, any Claimant holding multiple Allowed Claims against more than one Debtor that do not constitute Secondary Liability Claims and that arise from the contractual joint, joint and several, or several liability of such Debtors, the guaranty by one Debtor of another Debtor's obligation or other similar circumstances may not receive, in the aggregate, from all Debtors, more than 100% of the amount of the underlying Claim giving rise to such multiple Claims.

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 04-45343   Doc# 242-2   Filed: 12/10/04   Entered: 12/10/04 15:39:52   Page 13 of 44

Notwithstanding the foregoing, the (i) consolidation of the Debtors shall not affect the legal and organizational structure of the Debtors, (ii) any Liens that are maintained, recognized, or preserved under this Plan shall be unaffected by the consolidation, and (iii) claims under or with respect to any insurance policy of any Debtor (or any right to the proceeds of any such policy or policies) shall be unaffected by the consolidation.

The Plan shall be deemed to be a motion by the Debtors for substantive consolidation. Any objection by an affected Creditor to such consolidation shall be treated as an objection to Confirmation and shall be determined by the Bankruptcy Court at the Confirmation Hearing. Failure to timely object to substantive consolidation may result in consolidation of the Debtors.

5.4 **JV Purchase Agreement.** Sydran Group shall cause Sydran Investors to approve and consent to, and cause BK-Sydran Ventures to enter into, the JV Purchase Agreement and effect and complete the transactions and its obligations therein. The proceeds of such purchase and sale transaction shall be distributed in accordance with the terms of the agreements governing BK-Sydran Ventures. Because the interest of Sydran Investors in BK-Sydran Ventures is structurally subordinated to BKC's interest in BK-Sydran Investors, there will be nothing paid or distributed to Sydran Investors or to Sydran Group from the sale of the twenty-five (25) BKC restaurants owned by BK-Sydran Ventures.

5.5 **Available Cash.** On or as soon as practical following the Effective Date, the Claims Reserve Account shall be opened by the Disbursing Agent and funded with the Available Cash to the extent of any unencumbered Cash, which funds shall constitute Plan Proceeds. Thereafter, from time to time, upon receipt of any Liquidation Proceeds or any Litigation Recovery, such funds will be promptly delivered by the Reorganized Debtors to the Disbursing Agent for deposit into the Claims Reserve Account and shall become part of the Plan Proceeds.

5.6 **Handling of Plan Assets and Collection of Plan Proceeds.** On the Effective Date, the Plan Assets and any other property of the Estates or the Consolidated Estate shall revest in the Reorganized Debtors, free and clear of all Claims and Liens other than those Liens recognized by this Plan. The Plan Assets shall be held by the Reorganized Debtors in trust

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

FIRST AMENDED JOINT PLAN OF REORGANIZATION

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

for Creditors and shall be distributed only in accordance with this Plan. From and after the Effective Date, and subject to Section 5.7 below, the Reorganized Debtors shall retain and pursue the Litigation on such terms and conditions as are consistent with the interests of Creditors and the reasonable business judgment of the Reorganized Debtors, sell or liquidate Plan Assets, and collect the accounts receivable, if any, of the Debtors. In addition, from and after the Effective Date, except as otherwise provided in this Plan or in the Confirmation Order, the Reorganized Debtors shall be free to operate without any limitation or restriction by, and without any requirement to comply with, the Bankruptcy Code, Bankruptcy Rules, or Guidelines of the United States Trustee. All Cash, all Liquidation Proceeds, and all Litigation Recoveries realized or obtained by the Reorganized Debtors shall be promptly delivered to the Disbursing Agent for deposit into the Claims Reserve Account and such funds shall be held in trust by the Disbursing Agent as Plan Proceeds. Except as otherwise provided in this Plan and the Confirmation Order, such Plan Proceeds shall be free and clear of all Claims and Liens and shall only be expended in accordance with the provisions of this Plan. To the extent required to make distributions to the holders of Allowed Claims, fund the Claims Reserve Account, pay Plan Expenses, and otherwise implement this Plan, all Plan Proceeds shall be held in trust by the Disbursing Agent and shall be distributed to Creditors in accordance with section 1123 of the Bankruptcy Code.

5.7 **Litigation.** Except as otherwise provided in this Plan, all Litigation is retained and preserved pursuant to section 1123(b) of the Bankruptcy Code. From and after the Effective Date, all Litigation will be prosecuted or settled by the Reorganized Debtors. To the extent any Litigation is already pending on the Effective Date, the Reorganized Debtors as successor to the Debtors will continue the prosecution of such Litigation. Any Litigation Recovery from the Litigation will be deposited in the Claims Reserve Account as Plan Proceeds.

5.8 **Payment of Plan Expenses.** All Plan Expenses may be paid by the Disbursing Agent from the Claims Reserve Account without further notice to Creditors or approval of the Bankruptcy Court. The Confirmation Order shall advise creditors and other parties in interest of the right to deliver a written request to the Reorganized Debtors for notice of any post-Confirmation applications by the post-Confirmation professionals seeking approval of

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1   post-Confirmation fees and expenses.  Any disputes concerning the payment of Plan Expenses

2   shall be submitted to the Bankruptcy Court for resolution.

3           5.9     **Distribution of Plan Proceeds.**  The Plan Proceeds shall be used to satisfy

4   the payments required under the Plan, provided that the Disbursing Agent shall only distribute

5   Net Plan Proceeds to the holders of Allowed Claims in such amounts and at such times as are set

6   forth in this Plan.  No payments or distributions shall be made by the Disbursing Agent on

7   account of Disputed Claims unless and to the extent such Claims become Allowed Claims.  The

8   Net Plan Proceeds allocated to Disputed Claims will not be distributed but will be held in the

9   Claims Reserve Account by the Disbursing Agent in accordance with this Plan pending resolution

10  of such Disputed Claims.

11          5.10    **Post-Confirmation Operations of the Reorganized Debtor.**  Following

12  the Effective Date, (i) the Reorganized Debtors shall sell or dispose of any remaining assets,

13  collect any accounts receivable, generate Liquidation Proceeds, prosecute or settle the Litigation,

14  promptly transfer all receipts and collections to the Disbursing Agent for deposit into the Claims

15  Reserve Account, and generally administer the Plan.

16          5.10.1  **Power and Authority of Responsible Officer.**  From and after the

17  Effective Date, the Reorganized Debtors will be managed and governed by the Responsible

18  Officer who shall act as the representative of the Reorganized Debtors.  Activities of the

19  Reorganized Debtors as permitted and limited under this Plan will be managed by the

20  Responsible Officer.  The Responsible Officer may use lower priced employees of his firm as he

21  deems appropriate, but in any event the Responsible Officer and any employees or members of

22  his firm who perform work for the Responsible Debtors shall be compensated for time expended

23  at the Blended Rate.  The Responsible Officer shall be reimbursed for reasonable out of pocket

24  expenses.  Such compensation and reimbursement shall be considered Plan Expenses.

25  Confirmation of the Plan shall constitute the appointment of the Responsible Officer by the

26  Bankruptcy Court as the representative of the Reorganized Debtors to (a) exercise the rights,

27  power and authority of the Reorganized Debtors under applicable provisions of the Plan and

28  bankruptcy and non-bankruptcy law, (b) retain professionals to represent the Reorganized

Case: 04-45343   Doc# 242-2   Filed: 12/10/04   Entered: 12/10/04 15:39:52   Page 16
of 44

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Debtors in performing and implementing the Plan, (c) marshal and liquidate the Plan Assets and to collect the Plan Proceeds for the benefit of Creditors, (d) prosecute the Litigation and otherwise attempt to collect or realize upon the Plan Assets, (e) resolve Disputed Claims and effectuate distributions to Creditors under the Plan, and (f) otherwise implement the Plan, wind up the affairs of the Debtors and close the Chapter 11 Cases.  On the Effective Date, the Responsible Officer will be deemed to have retained the Debtors' Professionals under the arrangements existing on the Effective Date, without any need for new retention agreements or further orders of the Bankruptcy Court.  The Confirmation Order shall provide that the Responsible Officer is authorized to execute a certificate of dissolution for the Reorganized Debtors pursuant to applicable non-bankruptcy law, at such time as the Reorganized Debtors have fully wound up its affairs in accordance with applicable law pursuant to the provisions of the Plan.

5.10.2  **Liquidation and Dissolution of the Reorganized Debtors.**  The Reorganized Debtors shall conduct no business following the Effective Date other than winding up their affairs in accordance with applicable law and the provisions of this Plan.  Without limiting the generality or effect of the foregoing, following the Effective Date, the Reorganized Debtors shall:  (i) undertake those transactions that are necessary, advantageous or practicable to obtain the maximum value from the Plan Assets; and (ii) exercise their best efforts and endeavor in good faith and without undue delay to liquidate all of the Plan Assets and to successfully prosecute the Litigation.  Pursuant to applicable bankruptcy and non-bankruptcy law, the Reorganized Debtors (acting through the Responsible Officer) shall be authorized to (i) wind up their affairs and dissolve, and (ii) put into effect and carry out the terms of the Plan and any orders of the Bankruptcy Court entered in the Chapter 11 Cases, without further action by their managers, partners, owners, boards of directors, investors, stockholders, or shareholders.

5.11  **Full and Final Satisfaction.**  Commencing upon the Effective Date, the Disbursing Agent shall be authorized and directed to distribute the amounts required under the Plan to the holders of Allowed Claims according to the provisions of the Plan.  Upon the Effective Date, all Debts of the Debtor shall be deemed fixed and adjusted pursuant to this Plan and the Debtors shall have no further liability on account of any Claims or Interests except as set

54

forth in this Plan. All payments and all distributions made by the Disbursing Agent under the Plan shall be in full and final satisfaction, settlement and release of all Claims; provided, however, that nothing contained in this Section 5.11 of the Plan, or in any other provision of this Plan, shall be deemed to constitute or result in a discharge of the Debtor under Bankruptcy Code section 1141(d).

5.12 **Distribution Procedures.** Except as otherwise agreed by the holder of a particular Claim, or as provided in this Plan, all amounts to be paid by the Disbursing Agent under the Plan shall be distributed in such amounts and at such times as is reasonably prudent. On the Effective Date, or as soon as practicable thereafter, the Disbursing Agent shall: (i) marshal all then available Plan Proceeds; (ii) to the extent of unencumbered Cash or Cash distributable to the holders of Allowed Claims in Class 10, establish and fund the Claims Reserve Account pursuant to Section 5.14 of the Plan; (iii) promptly pay the holders of Allowed Secured Claims the portions of the Purchase Price encumbered by the Liens of those Claimants, after first giving effect to the Intercreditor Agreements; and (iv) make interim and final distributions of Plan Proceeds from the Claims Reserve Account in the amounts and according to the priorities set forth in Articles 3 and 4 of this Plan. Notwithstanding any provision to the contrary in this Plan, distributions may be made in full or on a Pro Rata basis depending on (i) the amount of the Allowed Claim, (ii) the then available Plan Proceeds in the Claims Reserve Account, and (iii) the then anticipated Plan Proceeds. The Disbursing Agent shall make the Cash payments to the holders of Allowed Claims: (a) in U.S. dollars by check, draft or warrant, drawn on a domestic bank selected by the Disbursing Agent in its sole discretion, or by wire transfer from a domestic bank, at the Disbursing Agent's option, and (b) by first-class mail (or by other equivalent or superior means as determined by the Disbursing Agent).

5.13 **Disbursing Agent.** The Disbursing Agent may employ or contract with other entities to perform the obligations created under the Plan. Any third party Disbursing Agent shall receive reasonable compensation for services rendered and reimbursement for expenses incurred in connection with this Plan or any functions or responsibilities adopted under the Plan which amounts may be deducted from the Claims Reserve Account as Plan Expenses. The

Case: 04-45343   Doc# 242-2   Filed: 12/10/04   Entered: 12/10/04 15:39:52   Page 18 of 44

Disbursing Agent shall be empowered to (i) effect all actions and execute all agreements, instruments, and other documents necessary to perform its duties under the Plan, (ii) make all distributions contemplated hereby, (iii) employ professionals to represent it with respect to its responsibilities, and (iv) exercise such other powers as may be vested in the Disbursing Agent by order of the Bankruptcy Court, pursuant to the Plan, or as deemed by the Disbursing Agent to be necessary and proper to implement the provisions hereof. To the extent the one or more of the Reorganized Debtors acts as the Disbursing Agent, the Reorganized Debtor(s) shall not receive a fee for such services, although the Reorganized Debtor(s) may employ and pay persons or entities salaries, wages or ordinary compensation for services performed.

5.14    **Claims Reserve Account.** On or as soon as practicable after the Effective Date, the Disbursing Agent shall (a) to the extent of any Cash or, where applicable, unencumbered Cash, create and fund the Claims Reserve Account, and (b) periodically deposit the Cash from Plan Proceeds into the Claims Reserve Account to satisfy the obligations created under the Plan. The Claims Reserve Account shall contain the following five sub-accounts: (1) Secured, (2) Administrative, (3) Priority Claims, (4) Plan Expenses, and (5) Allowed Unsecured Claims. Each sub-account within the Claims Reserve Account shall contain an amount of Cash deemed sufficient by the Reorganized Debtors for the payment of Allowed Claims in accordance with the priorities and amounts set forth in Articles 3 and 4, all anticipated Plan Expenses, and Disputed Claims. The Disbursing Agent shall be authorized to transfer funds among sub-accounts as necessary to replenish any sub-accounts as and when distributions are made to Creditors. All Plan Expenses may be deducted and paid from sub-account 4 without further order of the Bankruptcy Court. The Disbursing Agent shall periodically transfer all earnings and interest income on the Claims Reserve Account for deposit to and distribution from sub-account 5. Unless otherwise provided in the Confirmation Order, the Claims Reserve Account shall be invested by the Disbursing Agent in a manner consistent with the objectives of section 345(a) of the Bankruptcy Code.

5.15    **Resolution of Disputed Claims.** All objections to Claims shall be filed and served not later than 180 days following the Effective Date; provided, however, such date

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

may extended beyond 180 days by the Bankruptcy Court for cause shown.  Buyer shall be deemed a party in interest with standing to object to the Claim and any Administrative Claim that is an Assumed Obligation.  If an objection is not timely filed by the deadline established in this Section 5.15, any remaining Disputed Claims shall be deemed to be Allowed Claims for purposes of this Plan.  Unless otherwise provided in the Confirmation Order, the Reorganized Debtors shall be authorized to settle, or withdraw any objections to, any Disputed Claim following the Confirmation Date without further notice to Creditors or authorization of the Bankruptcy Court, in which event such Claim shall be deemed to be an Allowed Claim in the amount compromised for purposes of this Plan; provided however, that the Reorganized Debtors may not settle any Claims that are Assumed Obligations without the consent of the Buyer.  Under no circumstances (i) will any distributions be made on account of Disallowed Claims or (ii) will any Disallowed Claim constitute an Assumed Obligation.

        5.16   **Reserve Provisions for Disputed Claims.**  The Disbursing Agent shall implement the following procedures with respect to the allocation and distribution of Cash in the Claims Reserve Account, after payment of all senior Claims, to the holders of Disputed Claims that become Allowed Claims:

        5.16.1  Cash respecting Disputed Claims shall not be distributed, but, if necessary, shall be withheld by the Disbursing Agent in an amount equal to the amount of the distributions that would otherwise be made to the holders of such Claims if such Claims had been Allowed Claims, based on the Disputed Claims Amount.

        5.16.2  All holders of Allowed Unsecured Claims shall be entitled to receive interim distributions under the Plan.  No distributions may be made to the holders of Allowed Unsecured Claims unless adequate reserves are established for the payment of Disputed Claims, and sufficient funds are also reserved for expected Plan Expenses.  Upon the Final Resolution Date, after payment of all senior Claims, all amounts (if any) remaining in sub-accounts 1-5 of the Claims Reserve Account, after reservation of an appropriate amount for anticipated Plan Expenses, shall be transferred to sub-account 5 for final distribution to the holders of Allowed Class 9 Claims.

**FIRST AMENDED JOINT PLAN OF REORGANIZATION**

DOCS_NX:7547.1

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1        5.16.3  For the purposes of effectuating the provisions of this Section 5.16,

2  the Bankruptcy Court may estimate the amount of any Disputed Claim pursuant to section 502(c)

3  of the Bankruptcy Code, in which event the amounts so fixed or liquidated shall be deemed to be

4  Allowed Claims pursuant to section 502(c) of the Bankruptcy Code for purposes of distribution

5  under this Plan.  In lieu of estimating the amount of any Disputed Claim, the Bankruptcy Court or

6  the Disbursing Agent may determine the Disputed Claims Amount to be reserved for such

7  Disputed Claim, or such amount may be fixed by agreement in writing by and between the Debtor

8  and the holder thereof.

9        5.16.4  When a Disputed Claim becomes an Allowed Claim, there shall be

10  distributed to the holder of such Allowed Claim, in accordance with the provisions of this Plan,

11  Cash equal to a Pro Rata Share of the Cash set aside for Disputed Claims within the applicable

12  sub-account of the Claims Reserve Account, but in no event shall such holder be paid more than

13  the amount that would otherwise have been paid to such holder if the Claim (or the Allowed

14  portion of the Claim) had not been a Disputed Claim.

15        5.16.5  Interim distributions may be made from time to time to the holders

16  of Allowed Claims prior to the resolution by Final Order or otherwise of all Disputed Claims,

17  provided that the aggregate amount of Cash to be distributed at such time from the Claims

18  Reserve Account is practicable in comparison to the anticipated costs of such interim

19  distributions.

20        5.16.6  No holder of a Disputed Claim shall have any Claim against the

21  Cash reserved with respect to such Claim until such Disputed Claim shall become an Allowed

22  Claim.  In no event shall any holder of any Disputed Claim be entitled to receive (under the Plan

23  or otherwise) from the Debtor, the Reorganized Debtors, or the Claims Reserve Account any

24  payment (x) which is greater than the amount reserved for such Claim by the Bankruptcy Court

25  pursuant to this Section 5.16, or (y) except as otherwise permitted under this Plan, of interest or

26  other compensation for delays in distribution.  In no event shall the Reorganized Debtors have

27  any responsibility or liability for any loss to or of any amount reserved under the Plan.

28

DOCS_NX:7547.1

5.16.7  To the extent a Disputed Claim ultimately becomes an Allowed Claim in an amount less than the Disputed Claim Amount reserved for such Disputed Claim, then the resulting surplus of cash shall be retained in the Claims Reserve Account and shall be distributed among the holders of Allowed Claims until such time as each holder of an Allowed Claim has been paid the Allowed amount of its Claim.

5.17  **Allocation of Distributions.**  Distributions to any holder of an Allowed Claim shall be allocated first to the principal amount of any such Allowed Claim, as determined for federal income tax purposes, and then, to the extent the consideration exceeds such amount, to the remainder of such Claim comprising interest, if any (but solely to the extent that interest is an allowable portion of such Allowed Claim).

5.18  **Rounding.**  Whenever any payment of a fraction of a cent would otherwise be called for, the actual distribution shall reflect a rounding of such fraction down to the nearest cent.

5.19  **No Interim Cash Payments of $50 or Less on Account of Allowed Claims.**  If an interim distribution to be received by the holder of an Allowed Claim would be $50 or less, notwithstanding any contrary provision in the Plan, at the discretion of the Disbursing Agent, no such interim payment will be made to such holder, and such Cash shall be held for such holder until the earlier of (i) the next time an interim distribution is made to the holders of Allowed Claims (unless the distribution would still be less than $50 in which case this section 5.18 shall again apply), or (ii) the date on which final distributions are made to the holders of Allowed Claims.

5.20  **Disputed Payments.**  In the event of any dispute between and among Creditors as to the right of any entity to receive or retain any payment or distribution to be made to such entity under the Plan, the Disbursing Agent may, in lieu of making such payment or distribution to such entity, instead hold such payment or distribution until the disposition thereof shall be determined by the Bankruptcy Court.

5.21  **Unclaimed Property.**  Any entity which fails to claim any Cash within 180 days from the date upon which a distribution is first made to such entity shall forfeit all rights

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

to any distribution under the Plan.  Upon forfeiture, such Cash (including interest thereon) shall be deposited into the Claims Reserve Account to be distributed to the holders of Allowed Claims in the manner described in Section 5.16.7 for distribution of excess amounts.  Entities which fail to claim Cash shall forfeit their rights thereto and shall have no claim whatsoever against the Debtor, the Reorganized Debtors, or the Disbursing Agent or any holder of an Allowed Claim to whom distributions are made by the Disbursing Agent.

5.22    **Setoffs.**  Nothing contained in this Plan shall constitute a waiver or release by the Debtors of any right of setoff or recoupment the Debtors may have against any Creditor or Interest Holder.

5.23    **No Distributions on Late-Filed Claims.**  Except as otherwise provided in a Final Order of the Bankruptcy Court, any Claim as to which a proof of Claim was first filed after the Bar Date shall be a Disallowed Claim, and the Reorganized Debtors shall not make any distribution to a holder of such a Claim; provided, however, that to the extent such Claim was listed in the Schedules (other than as contingent, disputed, or unliquidated) and would be an Allowed Claim but for the lack of a timely proof of Claim, the Reorganized Debtors shall treat such Claim as an Allowed Claim in the amount in which it was so listed.

5.24    **Withholding Taxes.**  Pursuant to section 346(f) of the Bankruptcy Code, the Disbursing Agent shall be entitled to deduct any federal, state or local withholding taxes from any Cash payments made with respect to Allowed Claims, as appropriate.  The Debtors shall comply with all reporting obligations imposed on it by any governmental unit.

## ARTICLE 6

## EXECUTORY CONTRACTS

6.1    **Executory Contracts and Unexpired Leases.**

6.1.1    **Assumption.**  Upon the Effective Date, the Debtors will assume, and assign to the Buyer, free and clear of any Liens or Claims, each Assumed Executory Contract, including each of the executory contracts and unexpired leases identified on Schedule A to this Plan as Assumed Executory Contracts.  The Debtors reserve the right to make additions to Schedule A up to 28 days prior to the commencement of the Confirmation Hearing and deletions

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

from Schedule A, to the extent permitted or required under the Asset Purchase Agreement, at any time prior to entry of the Confirmation Order or an Assumption and Cure Order with respect to such executory contract or unexpired lease. An updated version of Schedule A will be filed with the Bankruptcy Court as part of the Plan Supplement prior to the commencement of the Confirmation Hearing. The Debtors also intend, consistent with section 6.2(d)(i) of the Asset Purchase Agreement, to file a motion seeking entry of an Assumption and Cure Order on or before the Confirmation Hearing. The proposed Cure Obligation due to each non-debtor party to an Assumed Executory Contract shall be set forth in any such motion and is listed on Schedule A to this Plan opposite the name of such non-debtor party. The non-debtor party to an Assumed Executory Contract who disputes the Cure Obligation identified for such Assumed Executory Contract, or who disputes the Buyer's ability to provide adequate assurance of future performance within the meaning of Bankruptcy Code section 365(f)(2), must file an objection to the proposed Cure Obligation, or to the Buyer's ability to assure future performance, by the deadline for filing objections to Confirmation of the Plan (any applicable motion) or be forever barred from asserting a different Cure Obligation for such Assumed Executory Contract or from challenging the proposed assignment to the Buyer based upon the Buyer's ability to perform in the future under such Assumed Executory Contract. Failure to file an objection to the proposed assumption and assignment of an executory contract or unexpired lease by the applicable deadline shall be deemed to be consent by the non-Debtor party to such executory contract or unexpired lease to its assumption and assignment. Any disputes over Cure Obligations or adequate assurance of the Buyer's future performance will be determined by the Bankruptcy Court, but in all cases, subject to the Debtors' rights or obligations under the Asset Purchase Agreement to remove any particular executory contract or unexpired lease from Schedule A or to withdraw a motion to approve the assumption and assignment of any such executory contract or unexpired lease. Inclusion of a contract or lease on Schedule A does not constitute a waiver by the Debtors of the right to contend that some or all of such contract or lease is not executory. Notwithstanding anything contrary in any Assumption and Cure Order, the assumption and assignment of any Assumed Executory Contracts shall be conditioned on the occurrence of the Effective Date.

Nothing in this Section 6.1.1. of the Plan shall alter or affect the rights or powers of the Buyer or the Sellers under Section 6.2.(d) of the Asset Purchase Agreement to add or remove contracts or leases from Schedule 2.1(e) of the Asset Purchase Agreement.

6.1.2 **Rejection.** In addition to any executory contracts and unexpired leases previously rejected by the Debtors, upon the Effective Date, the Debtors will reject each executory contract or unexpired lease that is not listed on Schedule A (or any supplement thereto), including without limitation each of the executory contracts and unexpired leases identified on Schedule B to this Plan, but excluding the Designated Contracts and contracts and leases covered under section 6.4 of this Plan. The Debtors reserve the right to make additions to or deletions from Schedule B up to the time of entry of the Confirmation Order. An updated version of Schedule B will be filed with the Bankruptcy Court as part of the Plan Supplement prior to commencement of the Confirmation Hearing. Inclusion of a contract or lease on Schedule B does not constitute a waiver by the Debtors of the right to contend that some or all of such contract or lease is not executory. Any Rejection Claim arising from the rejection of an executory contract or unexpired lease pursuant to this section 6.1.2 shall be filed within thirty (30) days of service of the Confirmation Order (such date being the Rejection Claims Bar Date). Any Rejection Claim not filed by the Rejection Claims Bar Date shall be a Disallowed Claim and shall be forever barred as a Claim against the Debtors or any property of the Debtors and from sharing in any distribution under this Plan.

6.1.3 **Designation of Certain Executory Contracts and Unexpired Leases.** At any time prior to entry of an Assumption and Cure Order assigning to Buyer an executory contract or unexpired lease as an Assumed Executory Contract, to the extent permitted or required under the Asset Purchase Agreement, the Buyer may designate, in accordance with section 6.2(d)(v) of the Asset Purchase Agreement, such executory contract or unexpired lease (each, a "Designated Contract," and collectively, the "Designated Contracts") to be handled as an "Excluded Asset" under the Asset Purchase Agreement. In that event, to the extent required under the Asset Purchase Agreement, the Debtors will cooperate with the Buyer in any reasonable arrangement designed to provide the Buyer with the benefits and obligations under any such

FIRST AMENDED JOINT PLAN OF REORGANIZATION

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Designated Contract, including, to the extent permitted by the Bankruptcy Court, enforcement of all rights of the Debtors against the other party or parties thereto arising out of the breach or cancellation by such other party or otherwise.

6.2 **Satisfaction of Cure Obligations.** The Debtors, or the Buyer to the extent set forth in section 2.7 of the Asset Purchase Agreement, shall satisfy any Cure Obligations for the Assumed Executory Contracts by making a Cash payment, in the manner provided in Section 3.1 of this Plan, equal to the lesser of the amount: (a) set forth on Schedule A or in any other notice or motion filed and served in connection with the Confirmation Hearing or as may be determined in an Assumption and Cure Order, or (b) agreed to in writing between the Debtors and the non-debtor parties to such contracts or leases. In the event that an objection is timely filed with the Bankruptcy Court to the Cure Obligations proposed by the Debtors and served on counsel to the Debtors, and the Bankruptcy Court, after notice and hearing, determines that the Debtor is obligated to pay a different amount under section 365 of the Bankruptcy Code than proposed by the Debtors, then the Debtors shall have the right (to the extent provided in the Asset Purchase Agreement) within twenty (20) days after such determination to seek an order of the Bankruptcy Court rejecting such executory contract or unexpired lease.

6.3 **Adequate Assurance.** Buyer's promise to perform its obligations under each Assumed Executory Contract will constitute adequate assurance of future performance in accordance with Bankruptcy Code section 365(f)(2)(B) with respect to that Assumed Executory Contract unless otherwise provided in an Assumption and Cure Order.

6.4 **Post-Petition Executory Contracts and Unexpired Leases.** Except as may be provided otherwise by the Confirmation Order, all agreements and stipulations entered into by the Debtors on or after the Petition Date, and all executory contracts and unexpired leases previously assumed by the Debtors on or after the Petition Date, shall remain in full force and effect following Confirmation to the extent and in the manner set forth in such agreements, stipulations and assumed contracts or leases, in each case as approved and authorized by the Bankruptcy Court, and as the same may have been amended, modified or transferred. For purposes of clarification, the fact that an agreement has been assumed or entered into by the

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

63

Debtors after the Petition Date but prior to the Effective Date shall not except such agreement from being a Purchased Asset or Assumed Contract if such agreement otherwise would be a Purchase Asset or Assumed Executory Contract under the terms of the Asset Purchase Agreement.

6.5     **Effect of Confirmation Order.**  Subject to Section 6.1.3 hereof with respect to Designated Contracts, the Confirmation Order (or if set forth in a separate order from the Confirmation Order, the Assumption and Cure Order applicable to such Assumed Executory Contract) shall constitute an order of the Bankruptcy Court approving (effective only upon the occurrence of the Effective Date) the assumption or rejection, as the case may be, pursuant to sections 365 and 1123(b)(2) of the Bankruptcy Code of all executory contracts and unexpired leases under this Article of the Plan.  The contracts and leases under this Article 6 will be assumed or rejected, respectively, only to the extent that such contracts or leases constitute executory contracts or unexpired leases, and the identification of such agreements on Schedules A or B shall not constitute an admission with respect to the characterization of such agreements or the existence of any unperformed obligations, defaults, or damages thereunder.

**ARTICLE 7**

**CONDITIONS PRECEDENT TO CONFIRMATION OF THE PLAN AND TO THE EFFECTIVE DATE**

7.1     **Conditions to Confirmation of the Plan.**   Confirmation of this Plan is conditioned upon the satisfaction of each of the following conditions precedent, any one or more of which may be waived by the Debtor:

7.1.1    The substantive consolidation of the Debtors shall have been approved.

7.1.2    The Court shall have signed the Confirmation Order.

7.2     **Effect of Failure of Conditions to Confirmation.**  If any one or more of the conditions in section 7.1 is not met, the Debtors may, at their option, withdraw this Plan and, if withdrawn, this Plan shall be of no further force or effect.

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

7.3    **Effective Date.**  Provided no stay of the Confirmation Order is then in effect, this Plan shall become effective and the Effective Date shall occur upon the Closing Date.

7.4    **Failure of Effective Date.**  In the event the Asset Purchase Agreement is properly terminated as permitted by the Buyer or the Sellers, or if the Closing does not occur by the Closing Deadline (or any mutually agreed extension thereof), this Plan shall be of no force or effect and the Debtors will promptly seek revocation of the Confirmation Order.

## ARTICLE 8

## EFFECTS OF CONFIRMATION

8.1    **Binding Effect of Plan.**  The provisions of the confirmed Plan shall bind the Debtors, the Reorganized Debtors, any entity acquiring property under the Plan, and any Creditor or Interest Holder, whether or not such Creditor or Interest Holder has filed a proof of Claim or Interest in the Chapter 11 Cases, whether or not the Claim of such Creditor or the Interest of such Interest Holder is impaired under the Plan, and whether or not such Creditor or Interest Holder has accepted or rejected the Plan.  All Claims and Debts shall be as fixed and adjusted pursuant to this Plan.  With respect to any taxes of the kind specified in Bankruptcy Code section 1146(c), this Plan shall also bind any taxing authority, recorder of deeds or similar official for any county, state, or governmental unit or parish in which any instrument related to under this Plan or related to any transaction contemplated under this Plan is to be recorded.

8.1.1    **Asset Purchase Agreement.**   Upon entry of the Confirmation Order, (i) the Buyer and the Sellers shall be bound by the Asset Purchase Agreement to the extent provided therein, and (ii) the Sellers are authorized to perform their obligations under the Asset Purchase Agreement and to take such steps as are necessary, reasonable or convenient to effect the Closing.  Subject to the terms of the Confirmation Order and to any conditions to the Closing that remain to be satisfied, the Asset Purchase Agreement and the transactions contemplated therein are approved.

8.1.2    **Asset Purchase Agreement Controls.**   The Asset Purchase Agreement shall be deemed to be a part of this Plan and is hereby incorporated into this Plan by this reference.  In the event of any inconsistency between the Plan and the Asset Purchase

**FIRST AMENDED JOINT PLAN OF REORGANIZATION**

Case: 04-45343   Doc# 242-2   Filed: 12/10/04   Entered: 12/10/04 15:39:52   Page 28 of 44

Agreement, the terms and provisions of the Asset Purchase Agreement shall control with respect to the subject matter thereof.

8.2 **Revesting of Property of Debtors.** Upon the Effective Date, other than with respect to the Purchased Assets, title to all property of the Estates of the Debtors in the Chapter 11 Cases shall revest in the Reorganized Debtors, free and clear of any Liens or Claims except those Liens and Claims expressly preserved by this Plan or the Confirmation Order, and shall be retained by the Reorganized Debtors for the purposes contemplated under the Plan. Without limiting the generality of the foregoing, all Litigation Recoveries, rights to Liquidation Proceeds, and all resulting Plan Proceeds earmarked for disbursement to Creditors under the Plan, shall vest in the Reorganized Debtors upon the Effective Date and shall no longer constitute property of the Estates.

8.3 **Property Free and Clear.** Except as otherwise provided in this Plan or the Confirmation Order, all property that shall revest in the Reorganized Debtors shall be free and clear of all Claims, including Liens, interests, charges or other encumbrances of Creditors or Interest Holders, other than Liens specifically recognized and continued under this Plan. Following the Effective Date, the Reorganized Debtors may transfer and dispose of any such property free of any restrictions imposed by the Bankruptcy Code or the Bankruptcy Rules and without further approval of the Bankruptcy Court or notice to Creditors, except as may otherwise be required under the Plan or the Confirmation Order.

8.4 **Limitation of Liability.** The Debtors, the Buyer, each Consenting Secured Party, and the Official Committee, and their respective officers, directors, managers, employees, agents, advisors, accountants, attorneys and representatives (collectively, the "Exculpated Parties"), will neither have nor incur any liability to any entity for any action in good faith taken or omitted to be taken in connection with or related to the Chapter 11 Cases or the formulation, preparation, dissemination, implementation, Confirmation or consummation of the Asset Purchase Agreement, the Plan, the Disclosure Statement, or any agreement created or entered into in connection with the Plan or incident to the Chapter 11 Cases; provided, however, that this limitation will not affect or modify the obligations created under the Asset Purchase

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**FIRST AMENDED JOINT PLAN OF REORGANIZATION**

DOCS_NX:7547.1

Agreement, or any agreements entered into in connection with the Asset Purchase Agreement (including, without limitation, any agreements between and among the Buyer, any affiliates of the Buyer, the Holdings Companies, any Consenting Secured Party, and any third parties), or this Plan, or the rights of any holder of an Allowed Claim to enforce its rights under the Plan, nor shall the foregoing exonerate any of the Released Parties from any liability that is determined that would otherwise result from an act or omission to the extent such act or omission is determined by Final Order to have constituted gross negligence or willful misconduct.  In addition, notwithstanding any other provision of this Plan, no holder of a Claim or Interest, no other party in interest, none of their respective agents, employees, representatives, financial advisors, attorneys or affiliates, and no successors or assigns of the foregoing, shall have any right of action against any Released Party for any act or omission in connection with, relating to or arising out of the Chapter 11 Cases or the consideration, formulation, preparation, dissemination, implementation, Confirmation or consummation of the Asset Purchase Agreement, the Plan, the Disclosure Statement, or any transaction or document created or entered into, or any other act taken or omitted to be taken, in connection therewith, except for:  (a) the liability of any entity that would otherwise result from the failure to perform or pay any obligation or liability under the Plan or any contract, instrument, release or other agreement or document to be entered into or delivered in connection with the Plan (including, without limitation, the Asset Purchase Agreement or any agreements entered into in connection with the Asset Purchase Agreement, including any agreements between and among the Buyer, any affiliates of the Buyer, the Holdings Companies, any Consenting Secured Party, and any third parties) or (b) the liability of any entity that would otherwise result from any such act or omission to the extent that such act or omission is determined in a Final Order to have constituted gross negligence or willful misconduct.

8.5     **Plan Release.**

8.5.1     **Consenting Secured Parties.**  Upon the Effective Date, the Debtors, their respective Estates, and the Consolidated Estate (each, a "Releasor" and, collectively, the "Releasors") shall, and hereby do, pursuant to and by operation of this section 8.5 of the Plan, release, remise and discharge each Consenting Secured Party and its officers,

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 04-45343   Doc# 242-2   Filed: 12/10/04   Entered: 12/10/04 15:39:52   Page 30 of 44

directors, shareholders, parents, subsidiaries, affiliates, attorneys, accountants, agents and employees (each, a "Releasee" and, collectively, the "Releasees") of any and all claims, debts, torts, liabilities, damages, causes of action or claims for relief (other than the Excluded Claims) that any of such Releasors have, had, or ever had, of any kind or nature, suspected or unsuspected, latent or patent, contingent or liquidated, in any way arising out of or relating to the debtor-creditor relationship or business relationship between the Releasors and the Releasees with respect to the Debtors or the Holdings Companies. Furthermore, in connection with the foregoing release, the Releasors waive any benefits conferred by California Civil Code section 1542 (or similar applicable law or rule) which provides: "A general release does not extend to claims which the creditor does not know or suspect to exist in his favor at the time of executing the release, which if known by him must have materially affected his settlement with the debtor."

8.5.2 **Participating Vendors.** Each Participating Vendor who has properly elected treatment in Class 11 and who has executed an agreement to provide credit terms to the Buyer shall be released of any liability for Avoidance Actions.

8.6 **Injunction.** In implementation of the Plan, except as otherwise expressly provided in the Confirmation Order or the Plan, and except in connection with the enforcement of the terms of the Plan or any documents provided for or contemplated in the Plan, all entities who have held, hold or may hold Claims against or Interests in the Debtors, the Reorganized Debtors or the Estates that arose prior to the Effective Date are permanently enjoined from: (a) commencing or continuing in any manner, directly or indirectly, any action or other proceeding of any kind against the Debtors, the Reorganized Debtors, the Estates, or the Consolidated Estate, or any property of the Debtors, the Reorganized Debtors, the Estates, or the Consolidated Estate, any Consenting Secured Party, or the Buyer, with respect to any such Claim or Interest; (b) the enforcement, attachment, collection or recovery by any manner or means, directly or indirectly, of any judgment, award, decree, or order against the Debtors, the Reorganized Debtors, the Estates, the Consolidated Estate, any Consenting Secured Party, or the Buyer, or any property of the Debtors, the Reorganized Debtors, the Estates, the Consolidated Estate or the Buyer, with respect to any such Claim or Interest; (c) creating, perfecting or

enforcing, directly or indirectly, any Lien or encumbrance or any kind against the Debtors, the Reorganized Debtors, the Estates, the Consolidated Estate or the Buyer, or any property of the Debtors, the Reorganized Debtors, the Estates, the Consolidated Estate or the Buyer, with respect to any such Claim or Interest; (d) asserting, directly or indirectly, any setoff, right of subrogation, or recoupment of any kind against any obligation due the Debtors, the Reorganized Debtors, the Estates, the Consolidated Estate, any Consenting Secured Party, or the Buyer, or any property of the Debtors, the Reorganized Debtors, the Estates, the Consolidated Estate or the Buyer, with respect to any such Claim or Interest; and (e) any act, in any manner, in any place whatsoever, that does not conform to or comply with the provisions of the Plan with respect to such Claim or Interest. Nothing contained in this section shall prohibit the holder of a timely-filed proof of Claim from litigating its right to seek to have such Claim declared an Allowed Claim and paid in accordance with the distribution provisions of this Plan, or enjoin or prohibit the interpretation or enforcement by the Claimant of any of the obligations of the Debtors or the Reorganized Debtors under this Plan.

8.7 **Post-Confirmation Liability of Responsible Officer.** The Responsible Officer shall not be liable to the holders of Claims or Interests for any action or inaction taken in good faith in connection with the performance or discharge of his or her duties under this Plan, except the Responsible Officer will be liable for actions or inactions that are grossly negligent or which constitute willful misconduct.

8.8 **Insurance.** On or after the Effective Date, (i) the Responsible Officer shall obtain a fidelity bond and may obtain (if available) directors' and officers' liability insurance or errors and omission insurance (or equivalent insurance), provided (in the case of insurance) that such insurance is available at a reasonable price.

## ARTICLE 9

## RETENTION OF JURISDICTION

From and after the Confirmation Date, the Bankruptcy Court shall retain such jurisdiction as is legally permissible, including, but not limited to, for the following purposes:

FIRST AMENDED JOINT PLAN OF REORGANIZATION

DOCS_NX:7547.1

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

9.1     To hear and determine any and all objections to the allowance of a Claim, actions to equitably subordinate a Claim, or any controversy as to the classification of a Claim in a particular Class under the Plan;

9.2     To administer the Plan, the Plan Assets, and the Plan Proceeds;

9.3     To interpret, enforce, or determine any dispute arising under, the Asset Purchase Agreement;

9.4     To liquidate any Disputed Claims;

9.5     To hear and determine any and all adversary proceedings, contested matters or applications pending on the Effective Date;

9.6     To hear and determine any and all motions for the rejection of executory contracts and unexpired leases and to fix and allow any Claims arising therefrom;

9.7     To hear and determine any and all applications by Professionals for an award of Professional Fees;

9.8     To enable the Reorganized Debtors to commence and prosecute any Litigation which may be brought after the Effective Date;

9.9     To interpret and/or enforce the provisions of the Plan and the injunction provided for in the Plan and to determine any and all disputes arising under or regarding interpretation of the Plan or any agreement, document or instrument contemplated by the Plan, including the Asset Purchase Agreement;

9.10    To enter and implement such orders as may be appropriate in the event Confirmation is for any reason stayed, reversed, revoked, modified or vacated;

9.11    To modify any provision of the Plan to the extent permitted by the Bankruptcy Code and to correct any defect, cure any omission, or reconcile any inconsistency in the Plan or in the Confirmation Order as may be necessary to carry out the purposes and intent of the Plan;

9.12    To enter such orders as may be necessary or appropriate in furtherance of Confirmation and the successful implementation of the Plan and to determine such other matters

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

as may be provided for in the Confirmation Order or as may be authorized under the provisions of the Bankruptcy Code; and

9.13 To close the Chapter 11 Cases when administration of the case has been completed.

**ARTICLE 10**

**MISCELLANEOUS**

10.1 **Revocation of Plan of Reorganization**. The Debtors reserve the right to revoke and withdraw the Plan at any time on or before the Confirmation Date. If the Debtors revoke or withdraw the Plan pursuant to this section, or if Confirmation or the Effective Date does not occur, then the Plan shall be deemed null and void and, in such event, nothing contained herein shall be deemed to constitute a waiver or release of any Claims by or against the Debtors or any other entity or to prejudice in any manner the rights of the Debtors or any entity in any further proceedings involving the Debtors.

10.2 **Severability of Plan Provisions**. In the event that, prior to the Confirmation Date, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court shall, with the consent of the Debtors, have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions hereof shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation. The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision hereof, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

10.3 **Governing Law**. Except to the extent that the Bankruptcy Code or other federal law is applicable, the rights, duties and obligations arising under this Plan shall be governed by, and construed and enforced in accordance with, the laws of the State of California.

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

10.4   **Headings.** The headings contained in this Plan are for convenience of reference only and shall not limit or otherwise affect in any way the meaning or interpretation of this Plan.

10.5   **Language Interpretation.** In the interpretation of this Plan, unless the context otherwise requires, references in this Plan to the singular shall be construed to include references to the plural and vice versa; words importing the singular shall be deemed to import the plural and vice versa; words denoting gender shall include all genders; references to sections, schedules, and exhibits shall mean sections, schedules, and exhibits of and to this Plan; references to part includes the whole, except where the context clearly requires otherwise "or" has the inclusive meaning represented by the phrase "and/or," and the words "hereof," "herein," "hereunder," and similar terms in this Plan refer to this Plan as a whole and not to any particular provision of this Plan. The phrase "except as provided for in this Plan" and words of similar import shall also mean "except as provided for in the Asset Purchase Agreement."

10.6   **Exhibits.** All exhibits attached to this Plan, the Plan Supplement, or the Disclosure Statement are, by this reference, hereby incorporated into the Plan. The final version of all Exhibits to the Plan, the Plan Supplement, and the Disclosure Statement will be substantially in the forms attached hereto or thereto. The Debtors reserve the right to make nonsubstantive changes and corrections to such Exhibits in advance of the Confirmation Hearing. If any Exhibits are changed or corrected, the replacement Exhibits will be filed with the Bankruptcy Court prior to the commencement of the Confirmation Hearing

10.7   **Notices.** All notices required or permitted to be made in accordance with the Plan shall be in writing and shall be delivered personally or by nationally recognized overnight or next-day courier service, first class mail or via facsimile with electronic confirmation of receipt as follows:

**FIRST AMENDED JOINT PLAN OF REORGANIZATION**

DOCS_NX:7547.1

If to the Debtors:
(By Mail or Facsimile)

Matthew Schoenberg
Sydran Services, LLC, et al.
Bishop Ranch 8
3000 Executive Parkway, Suite 515
San Ramon, CA 94583-4258
(925) 328-3300
(925) 328-3318 (Facsimile)

With a copy to:

William P. Weintraub, Esq.
Pachulski, Stang, Ziehl, Young, Jones & Weintraub P.C.
Three Embarcadero Center, Suite 1020
San Francisco, CA 94111
(415) 263-7000
(415) 263-7010 (Facsimile)

With further copies to:

Ben H. Logan, Esq.
O'Melveny & Myers LLP
400 South Hope Street
Los Angeles, CA 90071
(213) 430-6000
(213) 430-6407 (Facsimile)

Jeffrey M. Reisner, Esq.
Irell & Manella LLP
840 Newport Center Drive
Suite 400
Newport Beach, CA 92660-6324
(949) 760-0991
(949) 760-5200 (Facsimile)

10.8 **Reservation of Rights.** Neither the filing of the Plan nor any statement or

provision contained in the Plan or in the Disclosure Statement, nor the taking by any party in

interest of any action with respect to the Plan, shall (a) be or be deemed to be an admission

against interest, and (b) until the Effective Date, be or be deemed to be a waiver of any rights any

party in interest may have (i) against any other party in interest, or (ii) in any of the assets of any

other party in interest, and, until the Effective Date, all such rights are specifically reserved. In

the event that the Plan is not confirmed or fails to become effective, neither the Plan nor the

Disclosure Statement nor any statement contained in the Plan or in the Disclosure Statement may

be used or relied upon in any manner in any suit, action, proceeding or controversy within or

73

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

without this Chapter 11 Cases involving the Debtors, except with respect to Confirmation of the Plan.

10.9 **Computation of Time Periods.** In computing any period of time prescribed or allowed by the Plan, the day of the act, event, or default from which the designated period of time begins to run shall not be included. The last day of the period so computed shall be included unless it is a Saturday, a Sunday, or a legal holiday, or, when the act to be done is the filing of a paper in the Bankruptcy Court, a day on which weather or other conditions have made the clerk's office inaccessible, in which event the period runs until the end of the next day which is not one of the aforementioned days.

10.10 **Defects, Omissions and Amendments.** The Debtors may, with the approval of the Bankruptcy Court and without notice to all holders of Claims or Interests, insofar as it does not materially and adversely affect holders of Claims, correct any defect, omission or inconsistency in the Plan in such manner and to such extent as may be necessary or desirable to expedite the execution of the Plan. The Plan may be altered or amended before or after Confirmation as provided in section 1127 of the Bankruptcy Code if, in the opinion of the Bankruptcy Court, the modification does not materially and adversely affect the interests of holders of Claims, so long as the Plan, as modified, complies with sections 1122 and 1123 of the Bankruptcy Code and the Debtor has complied with section 1125 of the Bankruptcy Code. The Plan may be altered or amended before or after the Confirmation Date but, prior to substantial consummation, in a manner which, in the opinion of the Bankruptcy Court, materially and adversely affects holders of Claims, so long as the Plan, as modified, complies with Bankruptcy Code sections 1122 and 1123, the Debtors have complied with Bankruptcy Code section 1125 and, after notice and a hearing, the Bankruptcy Court confirms such Plan, as modified, under Bankruptcy Code section 1129.

10.11 **Filing of Additional Documents.** The Debtors shall file with the Bankruptcy Court such agreements or other documents as may be necessary or appropriate to effectuate and further evidence the terms and conditions of the Plan.

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

Case: 04-45343   Doc# 242-2   Filed: 12/10/04   Entered: 12/10/04 15:39:52   Page 37 of 44

10.12 **Successors and Assigns**.  The rights, benefits and obligations of any entity named or referred to in this Plan shall be binding on, and shall inure to the benefit of, the heirs, executors, administrators, successors and/or assigns of such entity.

10.13 **Setoffs and Recoupments**.  The Disbursing Agent may, but shall not be required to, set off against or recoup from the payments to be made pursuant to this Plan in respect of a Claim, any claim of any nature whatsoever that the Debtors, the Reorganized Debtors, the Estates, or the Consolidated Estate, as applicable, may have against the holder of such Claim, but neither the failure to do so or the allowance of any Claim hereunder shall constitute a waiver or release of any such claim by the Debtors, the Reorganized Debtors, the Estates, or the Consolidated Estate, against such holder.

10.14 **Tax Exemption**.  Pursuant to Bankruptcy Code section 1146, the issuance, transfer or exchange of any security under this Plan, or the execution, delivery or recording of an instrument of transfer pursuant to, in implementation of or as contemplated by this Plan, including, without limitation, any transfers to or by the Debtors or the Disbursing Agent of the Debtor's property in implementation of or as contemplated by this Plan (including, without limitation, the transfer of the Purchased Assets under the Asset Purchase Agreement), or any transfers by the Holdings Companies (including any transfers by the Holdings Companies pursuant to or in furtherance of the Transaction Documents or Amended Transaction Documents, as applicable), shall not be taxed under any state or local law imposing a stamp tax, transfer tax or similar tax or fee.  In this regard, the Closing of the Asset Purchase Agreement is contingent on the successful refinancing of the existing Holdings Companies' debt, which in turn will be conditioned on the formation of new single purpose entities and the transfer of the Holding Companies' properties to those new entities to satisfy the lender requirements.  The Holdings Companies' refinancing, including the transfer of properties securing such refinancing, is therefore incident to and an integral and necessary part of, and a condition to, the reorganization of the Debtors, as well as one of the principal means for implementation of this Plan.  Accordingly, such refinancing and related transfers and other transactions are exempt from state and local documentary stamp taxes, intangible and similar taxes pursuant to Bankruptcy Code

Case: 04-45343   Doc# 242-2   Filed: 12/10/04   Entered: 12/10/04 15:39:52   Page 38 of 44

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

section 1146(c). Consistent with the foregoing, each recorder of deeds or similar official for any county, city or governmental unit or parish in which any instrument hereunder is to be recorded shall, pursuant to the Confirmation Order, be ordered and directed to accept such instrument, without requiring the payment of any documentary stamp tax, deed stamps, stamp tax, transfer tax, intangible tax or similar tax.

10.15 **Securities Exemption**. Any rights issued under, pursuant to or in effecting this Plan, and the offering and issuance thereof by any party, including without limitation, the Reorganized Debtors or the Disbursing Agent, shall be exempt from section 5 of the Securities Act of 1933, if applicable, and from any state or federal securities laws requiring registration for offer or sale of a security or registration or licensing of an issuer of, underwriter of, or broker or dealer in, a security, and shall otherwise enjoy all exemptions available for distributions of securities under a plan of reorganization in accordance with all applicable law, including without limitation, section 1145 of the Bankruptcy Code.

10.16 **Plan Interest Rate**. If and to the extent it is determined by the Bankruptcy Court that interest is required to be paid on an Allowed Claim other than as set forth in this Plan, the interest rate to be used shall be the Plan Interest Rate as determined by the Bankruptcy Court for such Claim.

10.17 **Implementation**. Upon Confirmation, the Debtors shall be authorized to take all steps and execute all documents necessary to effectuate the provisions contained in the Plan.

10.18 **Record Date**. To the extent a record date is required for implementation of this Plan, the record date shall be the Record Date.

10.19 **Certain Actions**.

10.19.1 By reason of entry of the Confirmation Order, prior to, on or after the Effective Date (as appropriate), all matters provided for under the Plan that would otherwise require approval of the owners, stockholders, shareholders, members, directors, managers, or partners of one or more of the Debtors under the Plan, including, without limitation, (i) the distribution of Cash pursuant to the Plan, (ii) the adoption, execution, delivery, and

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**FIRST AMENDED JOINT PLAN OF REORGANIZATION**

implementation of all contracts, leases, instruments, releases, and other agreements or documents related to the Plan, and (iii) the adoption, execution, and implementation of other matters provided for under the Plan involving the company or organizational structure of any Debtor, shall be deemed to have occurred and shall be in effect prior to, on or after the Effective Date (as appropriate), pursuant to the applicable general corporation, limited liability, or partnership law of the state in which the Debtors or the Reorganized Debtors are chartered, organized or incorporated, without any requirement of further action by the owners, stockholders, shareholders, members, directors, managers, or partners of the Debtors.

10.19.2    Effective upon the Effective Date, each of the Debtors' formation documents shall each be deemed amended to prohibit the issuance by the Debtors of nonvoting securities to the extent required under section 1123(a)(6) of the Bankruptcy Code.

10.19.3    On or as soon as practicable following the Effective Date, the Responsible Officer shall be authorized to cancel, annul and extinguish all Interests.

10.20    **Dissolution of Committee.**  On the Effective Date, the Official Committee will dissolve, and the members of the Official Committee and the Official Committee's Professionals will cease to have any role arising from or relating to the Chapter 11 Cases.  The Professionals retained by the Official Committee and the members thereof will not be entitled to assert any fee claims for any services rendered or expenses incurred after the Effective Date, except for reasonable fees for services rendered, and actual and necessary costs incurred, in connection with any applications for allowance of Professional Fees pending on the Effective Date or filed and served after the Effective Date pursuant to Section 3.2 of the Plan.

10.21    **Waiver of Ten (10) Day Stay.**  Debtors request as part of the Confirmation Order a waiver from the Bankruptcy Court of the ten (10) day stay of Bankruptcy Rule 3020(e) and, to the extent applicable, a waiver of the ten (10) day stay of Bankruptcy Rule 6004(g).

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

10.22 **Substantial Consummation**. On the Effective Date, the Plan shall be deemed substantially consummated under Bankruptcy Code sections 1101 and 1127(b).

Dated: _____, 2004                    Respectfully submitted,

**SYDRAN SERVICES, LLC,**                          **SYDRAN FOOD SERVICES IV, LLC,**
a Nevada limited liability company                 a Nevada limited liability company

By:_____                By:_____
Name:    Matthew Schoenberg                        Name:    Matthew Schoenberg
Title:   President and CEO                          Title:   President and CEO


**THE SYDRAN GROUP, LLC,**                         **SYDRAN BK SERVICES, LLC,**
a Nevada limited liability company                 a Nevada limited liability company

By:_____                By:_____
Name:    Matthew Schoenberg                        Name:    Matthew Schoenberg
Title:   President and CEO                          Title:   President and CEO


**SYDRAN FOOD SERVICES, L.P.,**                    **SYDRAN DEVELOPMENT, LLC,**
a California limited partnership                    a Nevada limited liability company

By: Sydran Services, LLC, its General Partner

                                                   By:_____
By:_____                Name:    Matthew Schoenberg
Name:    Matthew Schoenberg                        Title:   President and CEO
Title:   President and CEO


**SYDRAN FOOD SERVICES II, L.P.,**                 **SYDRAN CASUAL DINING**
a California limited partnership                    **SERVICES, LLC**
                                                   a Nevada limited liability company
By: Sydran Services, LLC, its General Partner
                                                   By:_____
By:_____                Name:    Matthew Schoenberg
Name:    Matthew Schoenberg                        Title:   President and CEO
Title:   President and CEO


**SYDRAN FOOD SERVICES III, L.P.,**                **SYDRAN III TEXAS, INC.**
a California limited partnership                    a Texas corporation

By: Sydran Services, LLC, its General Partner
                                                   By:_____
By:_____                Name:    Matthew Schoenberg
                                                   Title:   President and CEO
Name:    Matthew Schoenberg
Title:   President and CEO

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

1    Submitted by:

2    PACHULSKI, STANG, ZIEHL, YOUNG,
       JONES & WEINTRAUB P.C.

3

4    By:_____
         William P. Weintraub, Esq.

5          Attorneys for:
         Sydran Services, LLC,

6          The Sydran Group, LLC,
         Sydran Development, LLC,

7          Sydran BK Services, LLC,
         Sydran Food Services, L.P.,

8          Sydran Food Services II, L.P.,
         Sydran Food Services III, L.P.,

9          Sydran Food Services IV, LLC,
         Sydran Casual Dining Services, LLC,

10         and Sydran III Texas, Inc.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P.C.
ATTORNEYS AT LAW
SAN FRANCISCO, CALIFORNIA

**FIRST AMENDED JOINT PLAN OF REORGANIZATION**

DOCS_NX:7547.1

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW SAN FRANCISCO, CALIFORNIA)

**SCHEDULE A**

SCHEDULE OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES TO BE ASSUMED AND ASSIGNED

**TO BE SUPPLEMENTED**

| NON-DEBTOR PARTY TO EXECUTORY CONTRACT OR UNEXPIRED LEASE | DESCRIPTION OF EXECUTORY CONTRACT OR UNEXPIRED LEASE | CURE AMOUNTS |
|---|---|---|
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |
| | | |

1

**FIRST AMENDED JOINT PLAN OF REORGANIZATION**

DOCS_NX:7547.1

PACHULSKI, STANG, ZIEHL, YOUNG, JONES & WEINTRAUB P. C.
ATTORNEYS AT LAW SAN FRANCISCO, CALIFORNIA)

**<span style="color:blue">SCHEDULE B</span>**

SCHEDULE OF EXECUTORY CONTRACTS
AND UNEXPIRED LEASES TO BE REJECTED

**TO BE SUPPLEMENTED**

1.  All contracts and leases set forth in Rider B-1.

2.  All executory contracts or unexpired leases (other than Designated Contracts) not assumed prior to the Effective Date or subject to a pending motion for assumption as of the Effective Date, including all executory contracts or unexpired leases not listed on Schedule A.

1

**FIRST AMENDED JOINT PLAN OF REORGANIZATION**

DOCS_NX:7547.1